IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES B. MITCHELL

V.                    NO. 11-50033

UNITED STATES OF AMERICA

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On August 29, 2012, the Defendant/Movant James B. Mitchell
(hereinafter "the Defendant") filed an Amended 28 U.S.C. § 2255
motion. (Doc. 20).[1] The parties thereafter submitted briefs
(Government's Response - Doc. 23 and Defendant's Reply - Doc.
25),[2] and the matter is now ripe for consideration. The
undersigned, being well and sufficiently advised, finds and
recommends as follows with respect thereto:

**I.    PROCEDURAL BACKGROUND:**

On March 2, 2011, Defendant waived indictment and consented
to prosecution by information. (Doc. 1).

On March 2, 2011, an Information was filed, charging
Defendant with knowingly and willfully making a materially
false, fictitious, and fraudulent statement and representation
in an application to the Social Security Administration for the

---

[1] The undersigned entered an Order on September 10, 2012, construing Defendant's amended § 2255 motion
(Doc. 20) as being intended as an amended and substituted § 2255 motion and construing it as relating back to
the originally filed motion. The Court stated that it would not consider the originally filed motion (Doc. 10) or
the brief filed in support of it (Doc. 16), and granted Defendant's request for a new briefing schedule. (Doc. 22).

[2] Defendant filed subsequent motions for leave to file other documents, which the undersigned denied for various
reasons. (Docs. 30, 31, 33, 34).

purpose of obtaining retirement payments under the Social Security Act, in violation of 18 U.S.C. § 1001(a)(2). (Doc. 2).

On March 2, 2011, a Plea Agreement was filed, wherein Defendant agreed to plead guilty to the one-count Information. (Doc. 4).

On June 20, 2011, the Honorable United States District Judge Jimm Larry Hendren sentenced Defendant to 12 months imprisonment, to run consecutively to the sentence imposed in Case No. 10-50067; 3 years supervised release, to run concurrently with the supervised release imposed in Case No. 10-50067; a special assessment of $100; a fine of $1,000; and restitution of $11,131.00. (Doc. 9). No appeal was taken from the Judgment of conviction.

**II. GROUNDS FOR § 2255 MOTION:**

In the Amended § 2255 motion, which Defendant filed pro se, Defendant asserts the following grounds for relief:

Ground One: Violation of Due Process and Ineffective Assistance of Counsel – the Government breached its promise that his sentence of imprisonment in this case would run concurrent to the sentence of imprisonment imposed in Case No. 10-50067 and counsel failed to argue this issue;

Ground Two: Violation of Due Process – the Government breached the terms of the Plea Agreement in Case No. 10-50067 by bringing the charge in this case;

-2-

Ground Three: Prosecutorial Misconduct and Ineffective Assistance of Counsel- The Prosecutor acted in bad faith when she threatened Defendant if he did not agree to plead guilty to the instant offense she would indict him on other charges;

Ground Four: Defendant is actually innocent;

Ground Five: Ineffective Assistance of Counsel - Failing to argue that punishing a citizen more severely because of his criminal history is to punish him as a sub-citizen;

Ground Six: Ineffective Assistance of Counsel - Failing to argue that Supervised Release is unconstitutional;

Ground Seven: Denial of his 6th Amendment right to counsel of his choice.

The Court will first address Grounds One, Three, Five and Six which set forth ineffective assistance of counsel claims.

## III. **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS:**

To succeed on his ineffective assistance of counsel claims, Defendant must first demonstrate that "(1) 'counsel's representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'" Miller v. Dormire, 310 F.3d 600, 603 (8th Cir. 2002) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The prejudice requirement has been held to require that there be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  See United States v. Ledezma-Rodriguez, 423
F.3d 830, 836 (8th Cir. 2005). In addition, every effort should
be made to eliminate the "distorting effects of hindsight" in
assessing the attorney's conduct.  Strickland, 466 U.S. at 689.

If Defendant fails to show deficient performance by his
counsel, the Court does not need to proceed any further in its
analysis of an "ineffective assistance" claim. United States v.
Walker, 324 F.3d 1032, 1040 (8th Cir. 2003), cert. denied, 540
U.S. 898 (2003). Defendant's burden is a heavy one, DeRoo v.
United States, 223 F.3d 919, 925 (8th Cir. 2000), and there is a
"strong presumption that his counsel's conduct fell within the
wide range of reasonable professional assistance." Davis v.
Norris, 423 F.3d 868, 877 (8th Cir. 2005).

**A.**   **GROUND ONE: VIOLATION OF DUE PROCESS - GOVERNMENT
BREACHED PROMISE THAT SENTENCE WOULD RUN CONCURRENT
WITH SENTENCE IMPOSED IN CASE NO. 10-50067:**

Defendant argues that the Government promised him and his
attorney, Mr. Greg Klebanoff, on two or more occasions, that his
sentence on this case would run concurrent (and not consecutive)
to his sentence on Case No. 10-50067, and yet, the Assistant
United States Attorney breached this promise when she "lied to
the court and falsely alleged that she never made any such
promise and assurance to Petitioner and his attorney." (Doc. 20
at p. 2). Defendant concedes that there is nothing in the Plea
Agreement regarding this alleged promise.

-4-

In the Plea Agreement signed by Defendant and entered on March 2, 2011, Defendant agreed as follows:

> 27. The defendant and his attorney both acknowledge that this plea agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the defendant to plead guilty to the Information.

(Doc. 4 at pgs. 11-12).

"When an alleged oral promise is made prior to, or in conjunction with, a plea agreement, such promise cannot serve as an inducement to plead guilty when the defendant's 'plea agreement and plea-hearing representations negate such a claim.'" United States v. Leach, 562 F.3d 930, 935 (8th Cir. 2009)(quoting United States v. Norris, 20 Fed. Appx. 582, 583 (8th Cir. 2001)(unpublished per curiam). "This is because, '[a]bsent special circumstances, a defendant-quite as much as the government-is bound by a plea agreement that recites that it is a complete statement of the parties' commitments.'" Leach, 562 F.3d at 935 (quoting United States v. Connolly, 51 F.3d 1,3 (1st Cir. 1995). An integration clause "normally prevents a criminal defendant,...from asserting that the government made oral promises to him not contained in the plea agreement itself.'" United States v. Raifsnider, 663 F.3d 1004, 1010-11 (8th Cir. 2011) (quoting Leach, 562 F.3d at 935-936.

In addition, at the plea hearing held on March 2, 2011, where Defendant was represented by Mr. Klebanoff, Judge Hendren

-5-

asked Defendant the following questions:

> THE COURT: Is Mr. Greg Klebanoff who's here with you your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with his advice and service?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you had enough time to talk to him about this matter before you came to court?
>
> THE DEFENDANT: I have.
>
> ...
> THE COURT: So my first question, sir, did you in fact sign this agreement?
>
> THE DEFENDANT: Yes, sir. It looks like my signature.
>
> THE COURT: Did you read it –
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: – before you signed it? Did you go over it carefully with Mr. Klebanoff?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did anybody force you or threaten you to make you sign it?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Is this something you decided to do after consulting with your attorney?
>
> THE DEFENDANT: Right.
>
> THE COURT: Now, is the agreement complete? And by that I mean does it have everything in it on which you believe you have an agreement with the United States about this matter?

-6-

THE DEFENDANT: To my knowledge, it does.

THE COURT: So you're not relying on some promise or some commitment that's not set out in this agreement?

THE DEFENDANT: Well, the only thing I'm not sure if it's in that written agreement or not, there was a mention of the sentence on this case here running concurrent with other charges I've already pled guilty to. And I don't know if that was –

THE COURT: Well, I don't know –

THE DEFENDANT: – a verbal agreement. My attorney had mentioned that weeks ago.

THE COURT: Let me ask you about that, Ms. Triplett. Do you know what Mr. Mitchell's talking of?

MS. TRIPLETT: Your Honor, no. There's been speculation about whether it would run concurrent or consecutive, but there's been no guarantees made or promises made one way or another. Me and Mr. Klebanoff had talked about that it could – the Court could sentence it with his other case that's pending for sentencing before this court or could do it separately based on what Your Honor decides to do.

THE COURT: What say you, Mr. Klebanoff?

MR. KLEBANOFF: Well, that's – that was my understanding, and that was also what I believed I had communicated with Mr. Mitchell here, Your Honor.

THE COURT: Mr. Klebanoff (sic), I don't know that I see anything in here that assures you that any sentence you might receive in connection with this matter would be [sic] run concurrently with – with anything else. Now, I'm not sure that would be a proper thing for them to agree on anyway since that is a judgment the Court is –

THE DEFENDANT: Well, I do understand that.

-7-

THE COURT: – required to make. So I recognize that there are lots of things that are talked about that don't find their way into an agreement, but if you believe that you have been promised that if you go forward and consent to be charged by Information and plead guilty to it, that you have an agreement that any sentence you receive will run concurrently, I don't see that here.

THE DEFENDANT: Well, I'm – I don't recall any promises. It was just something my attorney had mentioned to me weeks ago. But he –

THE COURT: I suppose that's a possibility, but I don't even know that without looking at it further. But are you content sir? It doesn't look like to me this agreement contains any such a promise –

THE DEFENDANT: No.

THE COURT: – or agreement.

THE DEFENDANT: I'm content with it.

THE COURT: You're content with that?

THE DEFENDANT: Yes, sir.

...
THE COURT: All right. Now, the reason I go into that is, I don't want to get down to the sentencing hearing, Mr. Mitchell and you say, "Oh, wait a minute. By the way now, they promised me this or that." So if you think there's something out there that you were promised and you're relying on that's not in here, you need to tell me about it.

THE DEFENDANT: Fair enough.

THE COURT: You don't think there is?

THE DEFENDANT: No, sir.

(Doc. 14 at pgs. 2-3, 4-7).

It is apparent that the issue Defendant now raises in his § 2255 motion was completely and carefully addressed by Judge Hendren, who made a detailed inquiry of Defendant about the issue of whether the Government did, in fact, make such a promise, and whether he continued to contest the issue.

Accordingly, based upon the terms of the Plea Agreement, which was knowingly and voluntarily signed by the Defendant, as well as the extensive dialogue between Judge Hendren and Defendant at the plea hearing, the Court believes Defendant's argument contained in Ground One is without merit. Thus, counsel was not ineffective in failing to argue this issue.

**B.**   **GROUND THREE: PROSECUTORIAL MISCONDUCT AND INEFFECTIVE COUNSEL– THE PROSECUTOR ACTED IN BAD FAITH WHEN SHE THREATENED DEFENDANT IF HE DID NOT AGREE TO PLEAD GUILTY TO THE INSTANT OFFENSE SHE WOULD INDICT HIM ON OTHER CHARGES AND DEFENSE COUNSEL'S REMAINING SILENT ABOUT DEFENDANT OFFERING IN GOOD FAITH TO COOPERATE WITH THE GOVERNMENT:**

Defendant contends that the prosecutor acted in bad faith when she "threatened" him that if he did not agree to plead guilty to the instant offense, she would indict him on the instant case and for other charges, "including but not limited to identify theft, in spite of Petitioner and his attorney (Greg Klebanoff) stressing to (former) AUSA Triplett that Petitioner was innocent of making false statement(s) to the Social Security Administration and which formed the basis of the instant charges." (Doc. 20 at p. 11). He also contends that he agreed to

-9-

provide information regarding two unsolved murders in Ft. Smith.

"[A] plea of guilty precludes a petitioner from raising claims in a § 2255 petition alleging violation of rights *prior* to the plea." *Walking Eagle v. United States*, 876 F.Supp. 2d 1090, 1115 (D.S.D. 2012)(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970). "However, a plea of guilty does not waive arguments regarding the validity of the plea itself, including allegations of ineffective assistance of counsel during the plea process." *Walking Eagle*, 876 F.Supp. 2d at 1113. (citations omitted). Since Defendant seems to be arguing that his counsel was ineffective for not speaking up about his good faith effort to cooperate with the Government and that this affected the validity of the plea, the Court will address the merits.

Defendant's claim is in direct conflict with his own prior sworn testimony at the plea hearing, when he stated, upon inquiry by Judge Hendren, that no one had forced or threatened him to make him sign the Plea Agreement. (Doc. 14, at pgs 2-3).

The Eighth Circuit has held that there is no due process violation "when a defendant is openly presented with 'unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution.'" *United States v. Stenger*, 605 F.3d 492, 498 (8th Cir. 2010)(quoting *Luna v. Black*, 772 F.2d 448, 449-50 (8th Cir. 1985). "To constitute fear and coercion on a plea, [p]etitioner must show he was subjected to threats or

-10-

promises of illegitimate action." <u>United States v. Goodman</u>, 590 F.2d 705, 711 (8th Cir. 1979), <u>cert. denied</u>,440 U.S. 985 (1979)(internal quotation marks omitted). "To violate due process, a prosecutor's conduct must be so egregious as to render a defendant's trial fundamentally unfair." <u>Boschee v. United States</u>, No. 09-4135, 2013 WL 1309440 at *10 (D.S.D., Mar.27, 2013).

Defendant seems to argue that there were no other legitimate charges to which he would plead and therefore, he was subjected to threats of "illegitimate action." The fact that Defendant now denies he was guilty of other charges does not vitiate the fact that he knowingly and voluntarily entered a plea of guilty to the Information and clearly indicated he was not threatened or coerced to enter his plea.

The Government argues that with respect to Defendant's contention his counsel was ineffective for being silent about his offer to assist law enforcement investigating two unsolved murders, the information Defendant gave on the first murder was old and the information on the second murder came from a cellmate's account of what another prisoner recounted. Clearly, this argument fails to meet the strict standards of the two-part test set forth in <u>Strickland.</u>

Based upon the foregoing, the Court believes Defendant has failed to establish that the prosecutor acted in bad faith or

-11-

AO72A
(Rev. 8/82)

that his defense counsel was ineffective.

**C.   GROUND FIVE: INEFFECTIVE ASSISTANCE OF COUNSEL - FAILING TO ARGUE THAT PUNISHING A CITIZEN MORE SEVERELY BECAUSE OF HIS CRIMINAL HISTORY IS TO PUNISH HIM AS A SUB-CITIZEN:**

Defendant contends that his attorney failed in his duty to investigate his case so as to discover and argue this claim. (Doc. 20 at p. 18). Consideration of a defendant's criminal history is specifically authorized by statute. See 18 U.S.C. § 3553(a)(1).

Further, Defendant was sentenced to 12 months on the count contained in the information, which was within the guideline range of 10 to 16 months. There is a presumption of reasonableness to sentences within the Guidelines range. United States v. Standafer, 703 F.3d 424, 426 (8th Cir. 2013).

In addition, "[c]ourts have 'wide discretion at sentencing as to the kind of information considered or its source.'" United States v. Dillon, 545 Fed. Appx. 593, 594 (8th Cir. 2013)(quoting from United States v. Pratt, 553 F.3d 1165, 1170(8th Cir. 2009). This is regardless of the admissibility of the information under the rules of evidence, provided that it has "sufficient indicia of reliability." Dillon, 545 F3d. Appx. At 594 (quoting United States v. Rodriquez-Ramos, 663 F.3d 356, 364 (8th Cir. 2011); Boschee, 2013 WL 1309440 at *3 (holding that the rules of evidence do not apply at sentencing hearings, and the court has

-12-

AO72A
(Rev. 8/82)

broad discretion).

Therefore, the Court believes Defendant's argument contained in Ground Five is without merit.

**D.   GROUND SIX: INEFFECTIVE ASSISTANCE OF COUNSEL - FAILING TO ARGUE THAT SUPERVISED RELEASE IS UNCONSTITUTIONAL:**

18 U.S.C. § 3583 provides for the inclusion of a term of supervised release after imprisonment. Defendant argues that his counsel failed to investigate his case so as to discover and argue that supervised release is unconstitutional.

The Eighth Circuit has held that it would only strike down a condition of supervised release as unconstitutionally overbroad "'if its overbreadth is real and substantial in relation to its plainly legitimate sweep.'" United States v. Mefford, 711 F.3d 923, 927 (8th Cir. 2013) cert. denied, 134 S.Ct. 242 (2013)(quoting United States v. Thompson, 653 F.3d 688, 695 (8th Cir. 2011).

In this case, the Presentence Investigation Report (PSIR) stated that the guideline range for a term of supervised release was at least two years but not more than three years, pursuant to § 5D1.2(a)(2) of the United States Sentencing Guidelines. (PSIR at p. 8 ¶45). Judge Hendren placed Defendant on supervised release for a term of three years, to run concurrently to the supervised release periods pronounced in Case No. 10-50067, which was within the guideline range.

-13-

Defendant has failed to establish that the supervised release imposed is unconstitutionally overbroad, and therefore his argument contained in Ground Six is without merit.

Based upon the foregoing, Defendant has failed to establish that his counsel was ineffective based upon the grounds set forth in Grounds One, Three, Five and Six.

**IV.   <u>GROUND TWO</u>: VIOLATION OF DUE PROCESS - THE GOVERNMENT BREACHED THE TERMS OF THE PLEA AGREEMENT IN CASE NO. 10-50067 BY BRINGING THE CHARGE IN THIS CASE:**

In the Plea Agreement Defendant signed in Case No. 10-50067, the Government agreed that no other federal charges, "which stem from the activities described in the Superseding Indictment, will be brought against the defendant in the Western District of Arkansas." (Case No. 10-50067, Doc. 56 at ¶12).

First, the Court believes this ground must fail for failure to raise this issue on direct appeal. "Habeas relief is an extraordinary remedy and significant barriers exist in the path of a petitioner who seeks to raise an argument that he failed to raised [sic] on direct review." <u>United States v. Ramirez-Mendoza</u>, NO. 5:11-CR-50065, 2014 WL 5460489 at *3 (W.D. Ark., Oct. 27, 2014). "'More specifically, a claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for a default and actual prejudice or (2) actual innocence.'" <u>Id.</u> (quoting from <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998).

-14-

Defendant has failed to show cause for the failure to raise this claim on direct appeal or actual prejudice, or that he is actually innocent. Even if Defendant's claim of breach of plea agreement was not procedurally defaulted, as Defendant is asserting the breach, he has "the burden of establishing it." United States v. Bartel, 698 F.3d 658, 662 (8th Cir. 2012), cert. denied, 133 S.Ct. 1481 (2013)(quoting United States v. Raifsnider, 663 F.3d 1004, 1009 (8th Cir. 2011). Defendant has failed to meet his burden.

"To interpret a plea agreement, we apply 'general contract principles' and try to 'discern the intent of the parties as expressed in the plain language of the agreement when viewed as a whole.'" United States v. Lara-Ruiz, 681 F.3d 914, 919 (8th Cir. 2012))(quoting United States v. Lewis, 673 F.3d 758, 762 (8th Cir. 2011). "Allowing the government to breach a promise that induced a guilty plea violates due process." Id. at 761 (quoting from United States v. Jensen, 423 F.3d 851, 854 (8th Cir. 2005).

The issue in this case concerns the interpretation of charges which "stem from the activities described in the Superseding Indictment." Defendant must show "that the Government made one of the promises he asserts and that the promise was part of the 'inducement or consideration' offered by the government in exchange for his plea." United States v.

-15-

Raifsnider, 663 F.3d 1004, 1009 (8th Cir. 2011).

Clearly, the activities described in the Superseding Indictment in Case No. 10-50067 relate to Defendant's prostitution ring and money laundering. While the charge in Case No. 11-50033 was based upon the fact that Defendant earned income from his prostitution ring, it was not a part of the charges relating to the prosecution ring or the money laundering, but rather was based upon the independent action Defendant took in providing a false affidavit to the Social Security Administration. Hence, the charges in the instant case do not stem from the activities described in Case No. 10-50067, and therefore, there was no breach of the plea agreement. See Short v. United States, No. 4:08CV1786CDP, 2010 WL 411103 at *4 (E.D.Mo., Jan. 28, 2010).

Based upon the foregoing, the Court believes Defendant has failed to establish that the Government breached the Plea Agreement.

V.    **GROUND FOUR**: **DEFENDANT IS ACTUALLY INNOCENT:**

Defendant contends that he is actually innocent of the charge of making a false claim to the Social Security Administration in 2008 to start drawing Social Security benefits in January 2009, because he claimed he had not made "in excess of $400" (net income) in the previous two years which was "true" and his federal tax returns for 2006 and 2007 so "prove."

-16-

Therefore, he argues that he was factually innocent of the charge to which he entered a guilty plea.

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (internal quotations omitted). "Actual innocence means factual innocence, not mere legal insufficiency." Id. at 615.

As noted by the Government, Defendant admitted in the signed Plea Agreement that the Government could prove beyond a reasonable doubt that he "owned and operated an escort service from 2006 through August of 2010, and his net income was substantially more than $400 each year." (Doc. 4 at p. 4).

In addition, at the plea hearing, Defendant confirmed the following:

> MS. TRIPLETT: Mr. Mitchell owned and operated an escort service from at least 2006 through August of 2010, and his net income was substantially more than $400 each of those years. Mr. Mitchell knowingly and willfully made a materially false and fraudulent statement and representation regarding his income in order to obtain Social Security retirement benefits from the Social Security Administration. From December 8th to January 2010, the Social Security Administration paid Mr. Mitchell approximately $11,131 in Social Security retirement benefits based upon this false statement.

> THE COURT: Mr. Klebanoff, do you believe that if the information related by Ms. Triplett were presented to a jury and the jury believed it that it could be sufficient to support a finding of

-17-

> guilty beyond a reasonable doubt on the charge
> set out in the Information?
>
> MR. KLEBANOFF: I do, Your Honor.
>
> THE COURT: Mr. Mitchell, it appears to me that
> Ms. Triplett basically related what's in
> Paragraph 7 of your Plea Agreement, and you've
> already told me that's all true. Is that still
> the case?
>
> THE DEFENDANT: That's correct.
>
> THE COURT: She didn't say anything that's not
> true?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And those are the facts?
>
> THE DEFENDANT: Right.

(Doc. 14 at pgs. 16-17).

Based upon the foregoing, Defendant has failed to establish
that in light of all the evidence, he is actually innocent, and
that it is more likely than not that no reasonable juror would
have convicted him.

**VI.   GROUND SEVEN: DENIAL OF 6TH AMENDMENT RIGHT TO COUNSEL OF
CHOICE:**

Defendant argues that Mr. Davis would have been his counsel
in the instant case, but that the Government's "overzealous
coercive efforts to have Attorney Davis removed as counsel for
Petitioner on Case No. 5:10-Cr-50067 which Petitioner now has
more than ample proof of (not available to him at the time in
September, 2010 when Attorney Davis withdrew)." (Doc. 25 at p.
16).

-18-

The Court believes this ground must also fail for failure to raise this issue on direct appeal, for the same reasons as stated under the discussion of Ground Two above.   Defendant has failed to show cause for the failure to raise this claim on direct appeal or actual prejudice.

Even if this claim was not procedurally defaulted, it is without merit. First of all, the Court finds it significant that on March 26, 2013, Defendant filed a Complaint in the Western District of Arkansas, styled <u>James B. Mitchell v. Erwin L. Davis</u>, et al., Case no. 13-5064, against Mr. Davis and Mr. Klebanoff, for "fraud, malpractice, malfeasance, misfeasance, nonfeasance, incompetence, negligence, betrayal when [they[ knowingly and intentionally conspired with prosecutors to violate Plaintiff's Constitutional rights, and theft, inter alia." (Case No. 13-5064 at Doc. 1). It would therefore seem to appear that Mr. Davis was not necessarily Defendant's "counsel of choice."

Further, in Case No. 10-50067, on September 30, 2010, Mr. Davis filed a Motion to Withdraw As Counsel, stating that discovery had revealed that "the Government intends to call as a witness a previous client of this attorney, and that this attorney's continued representation of the Defendant in this case would likely result in a conflict of interest." (Case No. 10-50067 at Doc. 43).

-19-

In an October 8, 2012 letter Erwin Davis wrote to the Office of Professional Conduct, Mr. Davis indicated that after speaking to the Assistant U.S. Attorney, he became convinced she was going to file a motion to disqualify Mr. Davis as attorney for Defendant. Mr. Davis explained that rather than delay Defendant's trial while arguing the merits of such a motion, Mr. Davis visited with Defendant, and Defendant made it clear that he did not want a trial delay. Accordingly, Mr. Davis recommended attorney Greg Klebanoff be hired to represent Defendant, and Mr. Davis then set up a meeting with Defendant, Mr. Davis, and Mr. Klebanoff to discuss his representation and fee. Defendant decided to change lawyers for court appearance purposes, and wanted Mr. Davis to stay on as a consultant. (Case No. 10-50067, Doc. 153).

Clearly, Mr. Davis moved to withdraw when he realized the trial might otherwise be delayed, and he thought highly enough of Greg Klebanoff to recommend he be substituted as attorney of record.  In addition, Defendant's argument flies in the face of his continued confirmation at the plea hearing that he was satisfied with Mr. Klebanoff as his counsel, as indicated above.

Based upon the foregoing, the Court believes Defendant has failed to establish that he was denied his right to counsel of choice.

-20-

VII. <u>CONCLUSION</u>:

Based upon the foregoing analysis, the undersigned recommends that Defendant's § 2255 motion **(Doc. 20)** be **DENIED IN ITS ENTIRETY and DISMISSED WITH PREJUDICE.**

The Court also finds that a hearing is not required in this case, as the motion, files, and record conclusively show that the movant is not entitled to relief. <u>See</u> <u>United States v. Regenos,</u> 405 F.3d 691, 694 (8th Cir. 2005).

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(b) & (c)(2). A "substantial showing" is a showing that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997), <u>cert. denied</u>, 525 U.S. 834 (1998). Based upon the above analysis of Defendant's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends, that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). Given the numerous lengthy filings**

AO72A
(Rev. 8/82)

Defendant has submitted in this matter, Defendant is specifically directed to file only one set of objections, which should be no more than 25 pages in length. The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 29th day of January, 2015.

/s/ Erin L. Setser

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-22-